FILED - USDC -NH
2022 NOV 29 PH3:53

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 22-cr-00117-PB** |
| | ) | |
| **JOHN E. MURRAY, III** | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Jane E. Young, United States Attorney for the District of New Hampshire, and the defendant, John E. Murray, III, and the defendant's attorney, Robin Melone, Esquire, enter into the following Plea Agreement:

1. <u>The Plea and The Offense.</u>

The defendant agrees to plead guilty to Counts 1-16 of the Indictment, which charge him with production of child pornography, in violation of 18 U.S.C. § 2251(a) & (e), and sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2. <u>The Statute and Elements of the Offense.</u>

<u>Production of Child Pornography</u>

Title 18, United States Code, Section 2251(a), states, in pertinent part, that:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in...any sexually explicit conduct for the purpose of producing any visual depiction of such conduct...shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce...or if such visual depiction has actually been transported or transmitted using any means or facility of

interstate or foreign commerce or in or affecting interstate or foreign commerce.

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the Defendant employed, used, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

Second, that at the time, the victim was a minor; and

Third, that either (a) the defendant knew or had reason to know that such visual depiction would be mailed or transported across state lines or in foreign commerce; or (b) the visual depiction was produced using materials that have been mailed, shipped, or transported across state lines or in foreign commerce by any means; or (c) that the visual depiction was mailed or actually transported across state lines or in foreign commerce.

[Note:   There is no First Circuit pattern instruction for this offense.   These elements are derived from the statutory language.]

<u>Sex Trafficking of a Minor</u>

Title 18, United States Code, Section 1591(a)(1) provides, in pertinent part:

Whoever knowingly, in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that . . . the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b). 18 U.S.C. § 1591(a)(1).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited a person;

Second, that the defendant either (1) knew that the person was under the age of 18; or (2) recklessly disregarded the fact that the person was under the age of 18; or (3) had a reasonable opportunity to observe the person;

Third, that the defendant committed such act knowing or in reckless disregard of the fact that the person would be caused to engage in a commercial sex act; and

Fourth, that the defendant's conduct was in or affecting interstate commerce.

[*There is no First Circuit pattern instruction for this offense.   These elements are derived from the statutory language.*]

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government

would introduce evidence of the following facts, which would prove the elements of the offense

beyond a reasonable doubt:

John E. Murray, III, was a manager at the West Alton Marina, which is a full-service marina that operates in interstate commerce.   The marina is located on Alton Bay in New Hampshire and has over 250 rental slips that it leases annually to private individuals from New Hampshire, Massachusetts, and other states.   In addition to rental slips, the marina features gas docks, a convenience store, a winter boat-storage facility, and a boat service and parts building.

Murray was involved in the recruiting, hiring, and supervision of the marina's seasonal staff, which was made up predominantly of minors under the age of 18.   John Does 1-5 were minors under the age of 18 who were hired and directly supervised by Murray at the marina. With respect to each of John Does 1-5, the conduct alleged in the indictment and described below occurred during the time that John Does 1-5 were marina employees.

In August 2021, John Doe 1, a seasonal employee of the marina and a minor under the age of 18, disclosed that he had been solicited by Murray for pictures and videos of himself masturbating in exchange for money.   John Doe 1 disclosed that Murray had provided him cash in the form of $100 bills in exchange for the pictures and videos of John Doe 1 masturbating, and further stated that Murray specifically requested ejaculation videos.   Murray directed John Doe to send him the videos via Snapchat.   Snapchat is a social media platform that allows users to exchange messages, including images and videos, via the internet.

John Doe 1 estimated he had sent 15-20 videos of himself masturbating as directed by Murray in exchange for cash.   In particular, at Murray's request, John Doe 1 created videos that depicted John Doe 1 masturbating and sent them as directed to Murray via Snapchat, on or about May 21, 2021, June 18, 2021, and August 3, 2021.

Subsequent to John Doe 1's disclosure, numerous former and current employees of the marina were interviewed, several of whom disclosed similar conduct by Murray.   In particular, John Does 2, 3, and 4 all disclosed having been solicited by Murray to send masturbation videos to Murray via Snapchat in exchange for cash at times when each was under the age of 18. Numerous masturbation videos depicting John Does 1, 2, 3, and 4 were located on Murray's cell

phone and also in the contents of Murray's Snapchat account.   The forensic review of Murray's cell phone also reflected that Murray had distributed some videos of John Doe 1 and John Doe 2 to others.

With respect to John Doe 2, on or about November 24, 2020, January 27, 2021, and June 8, 2021, at Murray's request, John Doe 2 created videos that depicted John Doe 2 masturbating and sent them as directed to Murray via Snapchat.

With respect to John Doe 3, on or about July 19, 2018, September 4, 2018, and October 17, 2018, at Murray's request, John Doe 3 created videos that depicted John Doe 3 masturbating and sent them as directed to Murray via Snapchat.

With respect to John Doe 4, on or about July 30, 2018, September 15, 2018, and November 7, 2018, at Murray's request, John Doe 4 created videos that depicted John Doe 4 masturbating and sent them as directed to Murray via Snapchat.

Another former employee of the marina, John Doe 5, who is now an adult residing outside the state of New Hampshire, was interviewed by law enforcement in October 2021. John Doe 5 worked for Murray seasonally at the marina for 3 years beginning when he was 15 years old, from approximately 2015 through 2018.   John Doe 5 was 15 years old when Murray first fondled his genitals and performed oral sex on him.   This occurred approximately 10 times during the first summer that John Doe 5 worked at the marina.   On each occasion, Murray paid John Doe 5 $100 for allowing Murray to perform oral sex on John Doe 5.   Murray also enticed John Doe 5 to touch Murray's penis.   These incidents occurred at various locations on the marina property.   These same acts occurred on numerous occasions during the following two summers when John Doe 5 was 16 and 17 years old.   Each time, Murray paid John Doe 5 $100 in cash in exchange for John Doe 5 allowing Murray to perform oral sex on John Doe 5.

Subsequent to his initial interview, John Doe 2 made additional disclosures about having been paid by Murray to engage in sex acts with Murray on numerous occasions beginning in approximately July of 2020 when John Doe 2 was 15 years old.   John Doe 2 described that the first incident occurred in a garage across the street from the marina.   Murray unzipped John Doe 2's pants and began performing oral sex on John Doe 2.   Immediately after performing oral sex on John Doe 2, Murray paid John Doe 2 $100 in cash.   A similar incident occurred the following week, and thereafter occurred weekly or several times a week through December 2020 and several more times at the beginning of the 2021 season.   These incidents occurred at the garage, at the gate house, and at Murray's house.   For the first few months, Murray paid John Doe 2 $100 in cash immediately after each occasion on which he performed oral sex on John Doe 2.   As time went on, Murray's payments to John Doe 2 in connection with these sex acts became more sporadic.   On one occasion, John Doe 2 ejaculated in Murray's mouth, in exchange for which Murray paid John Doe 2 $150.

4. Penalties, Special Assessment and Restitution.

- 4 -

The defendant understands that the penalties for each offense are:

A.     For production of child pornography (Counts 1-12), a term of imprisonment of not less than 15 and not more than 30 years (18 U.S.C. § 2251(e));

       For sex trafficking of a minor (Counts 13-16), a term of imprisonment of not less than 10 years and not more than life (18 U.S.C. § 1591(b)(2));

B.     A maximum fine of $250,000 (18 U.S.C. § 3571);

C.     A term of supervised release of not less than 5 years and up to life (18 U.S.C. § 3583(k)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release;

D.     A mandatory special assessment of $1,600, $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A));

E.     An additional mandatory assessment of $5,000 (18 U.S.C. § 3014(a));

F.     For production of child pornography, an additional assessment of not more than $50,000 (18 U.S.C. 2259A(a)(2) & (3)).

G.     In addition to the other penalties provided by law, the Court shall order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 2259).

       To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

       The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

- 5 -

and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

      A.      Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

      B.      Respond to questions from the Court;

      C.      Correct any inaccuracies in the pre-sentence report;

      D.      Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree that a sentence of 300 months' imprisonment is an appropriate disposition of this case.

The parties intend this stipulation to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be

allowed the opportunity to withdraw his guilty plea.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. <u>Acceptance of Responsibility</u>.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B. Challenges the United States' offer of proof at any time after the plea is entered;

C. Denies involvement in the offense;

D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E. Fails to give complete and accurate information about his financial status to the Probation Office;

F. Obstructs or attempts to obstruct justice, prior to sentencing;

G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H. Fails to appear in court as required;

I.      After signing this Plea Agreement, engages in additional criminal conduct; or

J.      Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.      To plead not guilty or to maintain that plea if it has already been made;

B.      To be tried by a jury and, at that trial, to the assistance of counsel;

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate him; and

- 8 -

E.      To compulsory process for the attendance of witnesses to testify in his
        defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the

foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to

a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions

about the offense, and if he answers those questions falsely under oath, on the record, and in the

presence of counsel, his answers will be used against him in a prosecution for perjury or making

false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.      Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because
        he is guilty;

B.      Is entering into this Plea Agreement without reliance upon any promise or benefit of any
        kind except as set forth in this Plea Agreement or revealed to the Court;

C.      Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.      Understands the nature of the offense to which he is pleading guilty,
        including the penalties provided by law; and

E.      Is completely satisfied with the representation and advice received from
        his undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the

undersigned parties and cannot bind any other non-party federal, state or local authority. The

defendant also acknowledges that no representations have been made to him about any civil or

administrative consequences that may result from his guilty plea. The defendant understands

- 9 -

such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.  Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

The defendant further understands that by pleading guilty, the defendant will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). The defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements. The defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. The defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon his release from confinement following supervision.

12.  <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing,

or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13.    Forfeiture

The defendant agrees to immediately and voluntarily forfeit to the United States his interest, if any, in any and all assets subject to forfeiture pursuant to 18 U.S.C. § 2253(a) and/or 18 U.S.C. § 1594(d) as a result of his guilty plea, including, but not limited to the following: (A) one Apple iPhone Model 6; (B) one Apple iPhone Model 12; (C) one Apple iPad Pro (9.7 inch); one Lenovo computer; one HP laptop computer 350G2.

The defendant agrees and consents to the forfeiture of his interest in this asset pursuant to any criminal, civil and/or administrative forfeiture action brought to forfeit this asset. None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth

- 12 -

Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed.

R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3)

failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and

43(a) regarding notice of the forfeiture in the charging instrument and announcement of the

forfeiture at sentencing and incorporation of the forfeiture in the judgment.   The defendant

further acknowledges that he understands that the forfeiture of assets is part of the sentence that

may be imposed in this case.

The defendant waives and releases any and all claims he may have to any property seized

by the United States, or any state or local law enforcement agency and turned over to the United

States, during the investigation and prosecution of this case, whether forfeited or not.   The

defendant agrees to hold the United States, its agents, and employees, and any state or local law

enforcement agency participating in the investigation and prosecution of this case, harmless from

any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure,

detention and return of any property in connection with the investigation and prosecution of this

case.

The defendant acknowledges that the properties to be forfeited under this section are

subject to forfeiture as property facilitating or involved in illegal conduct.

14.   Waivers.

A.   Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or

sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and

voluntarily waives his right to challenge on direct appeal:

- 13 -

1.   His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.   Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.   His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

- 14 -

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

15. <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. <u>Final Binding Agreement</u>.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17. <u>Agreement Provisions Not Severable</u>.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

JANE E. YOUNG
United States Attorney

Date: 11·29·2022                    By: _____

Kasey A. Weiland
Assistant United States Attorney
Bar Association #82785 (VA)
53 Pleasant St., 4th Floor
Concord, NH 03301
Kasey.weiland2@usdoj.gov

The defendant, John E. Murray, III, certifies that he has read this 16-page Plea
Agreement and that he fully understands and accepts its terms.

Date: 11/29/2022                    _____

John E. Murray, III, Defendant

I have read and explained this 16-page Plea Agreement to the defendant, and he has
advised me that he understands and accepts its terms.

Date: 11/29/2022                    _____

Robin Melone, Esquire  # 16475
Attorney for John E. Murray, III