UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 22-cr-00117-PB |
| | ) | |
| **JOHN E. MURRAY, III** | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

John E. Murray, III, through counsel Robin D. Melone of Wadleigh, Starr & Peters, hereby offers the following memorandum in support of his request for the Court to adopt the binding plea agreement and imposed a sentence of 300 months in the Bureau of Prisons.

## INTRODUCTION

In August of 2021, a male under age 18, identified in State documents as John Doe 1, reported to the Alton Police Department that Mr. Murray had solicited, and that John Doe 1 had repeatedly provided, photos and videos of himself masturbating. He further alleged that Mr. Murray had sexually assaulted him. Subsequent investigation by Alton PD identified an additional John Doe and others with evidence. On August 12, 2021, Mr. Murray was arrested after an officer arrived at his home with a warrant for his electronic devices and certain data. Mr. Murray was detained on State charges at the Belknap County House of Corrections. On October 24, 2022, a federal grand jury returned the 16-count indictment. On November 1, 2022, Mr. Murray was transferred from the Belknap County House of Corrections to Federal custody and appeared in the District of New Hampshire for an initial appearance. Since that November 1, 2022 appearance Mr. Murray has been a Federal inmate in the Merrimack County House of Corrections. On December 14, 2022, Mr.

1

Murray appeared before the Court and pled guilty to the 16 count indictment. The Court accepted his pleas and sentencing is scheduled for March 22, 2023.

**GUIDELINE ANALYSIS**

Mr. Murray agrees with the guideline calculation articulated in the presentence report, which is summarized as follow.

**Counts 1 through 12** charge Production of Child Pornography in violation of 18 U.S.C. §§2251(a) and (e). Per USSG §2G2.1, the base offense level is 32. Multiple enhancements apply to each of these 12 counts:

- Counts 1 through and including 12 have a 2 level increase per USSG §2G2.1(b)(2)(A) because the offense involved commission of sexual contact (the victims' self-masturbation).

- Counts 1 through and including 12 have a 2 level increase per USSG§2G2.1(b)(5) because the victims were under the supervisory control of the defendant.

- Counts 2 and 6 each have a 2 level increase per USSG§2G2.1(b)(3)because the video of the victims' masturbating was distributed.

**Counts 13 through 16** charge Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c). Per USSG §2G1.3, the base offense level is 30. Multiple enhancements apply to each of these 12 counts.

- Counts 13 through and including 16 have a 2 level increase per USSG§2G1.3(b)(1)(B) because the victims were under the supervisory control of the defendant.

- Counts 13 through and including 16 have a 2 level increase per USSG§2G1.3(b)(2)(B) because Mr. Murray is at least 10 years old than the minor.[1]

- Counts 13 through and including 16 have a 2 level increase per USSG§2G1.3(b)(4)(A) because the offense involved commission of a sex act.

The adjusted offense levels per charge are as follows:

1. 36
2. 38
3. 36

---

[1] Application Note 3(B) of USSG §2G1.3 establishes a rebuttable presumption that this subsection applies in a "case in which a participant is at least 10 years older than the minor).

2

4.  36
5.  36
6.  38
7.  36
8.  36
9.  36
10. 36
11. 36
12. 36
13. 36
14. 36
15. 36
16. 36

Pursuant to USSG §3D1.4(a), (b) and (c), multiple count adjustment, each count is assigned one unit for a total of 16 units.  The greatest of the adjusted offense levels of the 16 counts is 38.

Per USSG §3D1.4, the offense level is increased pursuant to the number of units assigned by the amount indicated in the table at USSG §3D1.4.  The total combined adjusted offense level is 43.

There is a Chapter Four enhancement of plus 5.

Mr. Murray has timely notified the authorities of his intention to plead guilty and the offense level is decreased by 3 total points pursuant to USSG §3E1.1(a) and (b).  The final total adjusted offense level is 43.  Mr. Murray has a criminal history score of zero, establishing a criminal history category of I.  The guideline calculation is life.

Mr. Murray asks the Court to adopt the binding plea agreement and sentence him to 300 months in the Bureau of Prisons. Mr. Murray understands the Government will request that upon release he be supervised release for life.  He will not oppose this request.

Booker v. United States, 543 U.S. 220, 126 S.Ct. 738 (2005), authorizes the Court to impose a non-guideline sentence such as that jointly requested here.  "[F]ashioning a just sentence cannot be reduced to a mere arithmetical exercise [and] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produces an

illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of *judgment.*" United States v. Biheiri, 356 F.Supp. 2d 589 (E.D.Va. 2005) (emphasis added).  Until *Booker*, *Gall* and *Kimbrough*, we could hardly say that "we have a rational system of justice when the court, in imposing sentence, [was] stripped of the power to even consider the socio-economic and educational background of the defendant." United States v. Genao, 831 F.Supp. 246, 254 (S.D.N.Y.1993).

Congress has directed that the court "shall impose a sentence sufficient**, but not greater than necessary**, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a) (emphasis added). This is the "primary directive" of the sentencing statute. Ranum, 353 F.Supp. 2d at 986; United States v. Pirani, 406 F.3d 543, 564 (8th Cir. 2005) (Bye, J., dissenting) ("factors previously deemed ordinarily irrelevant to sentencing under Chapter 5H of the guidelines such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, employment record, family ties and responsibilities, and charitable service are now valid considerations for a court in imposing a sentence").

The jointly proposed sentence falls below the guideline calculation but accomplishes the goals of sentencing.  A 300- month sentence (25 years) is substantial.  Mr. Murray is 56 years old.  Should he serve the full 25 years, he will be 81 years old when he is released to supervised release. It is respectfully suggested that the jointly proposed sentence is sufficient but not greater than necessary to comply with the purposes of sentencing, that it reflects the seriousness of the offense, is just and sufficient punishment, and promotes respect for the law.  It is requested that the Court depart from the guidelines as permitted by Booker and adopt the proposal.  Booker v. United States, 543 U.S. 220 (2005).

**<u>CHARACTERISTICS OF THE DEFENDANT</u>**

The Court is tasked with sentencing individuals who have committed crimes - not the crimes they have commit. John has pled guilty to the 16 counts of the indictment. He did so to spare the accusers, not himself, the publicity of a trial. As the Court is likely aware, there are still pending State court matters related to two of the individuals in this matter. The Defense continues to make efforts to similarly resolve those matters by plea agreement and is hopeful that the terms will be in place before he appears for sentencing in this matter.

Additionally, there are a total of eight (8) civil suits pending between this Court and Belknap County Superior Court. John is a co-defendant in those suits, the other parties being the West Alton Marina, and the three Marina owners, one of whom is his former partner. These matters are in the very early stages of discovery and are not expected to proceed to trial for several years.

Counsel is mindful that effective representation on <u>all</u> pending matters (criminal and civil) requires Counsel to be rather circumspect in advocating for the Court's adoption of the plea agreement in this current matter.

John is 56 years old. He is a son, a brother, an uncle, and a friend. He has endeavored throughout life to be a teacher and a mentor. When he left formal teaching in 2003 (after 14 years as a public school teacher), it was because he wanted to spend more time with family and his (now former) partner. While the form of support and care he is able to offer from afar today looks very different, John has continued to support his family and friends even while incarcerated. The letters appended hereto offer examples of some of the kindness that John has shown others throughout his life. While acknowledging the

5

seriousness of the charges to which John has pled guilty, they describe him as thoughtful, caring, kind, and encouraging in his everyday interactions.  He has also been kind in extraordinary ways, specifically in 2019 when he donated a kidney to a friend.

John is not old.  Yet during his incarceration he was diagnosed with Stage 3 kidney disease.  Additionally, John has learned that, like his father (who just underwent quadruple bypass surgery), his sisters carry a genetic marker indicative of heart disease.  One sister is scheduled for bypass surgery this coming week.  The other is being monitored.  John, too, will need to be assessed for the genetic marker and monitored for signs of heart disease.  Mindful of his parents' declining health and of the health of his siblings, and the reality that prison life and conditions can be unkind, John has become keenly aware of his own mortality and what a 25-year prison sentence could mean for him.

Incarceration is the most basic, though not the only, form of punishment. Here, John has agreed to serve a substantial prison sentence that may well mean he dies in prison, a possibility with which he is slowly coming to terms.  He has accepted life behind walls and has adjusted to segregation from society.  But incarceration does not only serve to remove an individual from the public – it serves to isolate a detainee from their family. John has always been and remains incredibly close to his family.  It is the separation from his family that has been the most difficult condition of his incarceration.  His incarceration has meant he can no longer with and laugh with his mother.  He likely never will again.  He was unable to assist in caring for his father after his recent heart surgery.  He has been unable to be present and do for his siblings, his nieces, nephews, and friends as he has always done.  John is keenly aware of his absence, simultaneously aware of what he can no longer give to those he loves and of the burden his incarceration has placed on them.   His 25- year

sentence will keep him from birthdays, anniversaries, weddings, and, most likely, his parents' last days and last rites.  This, too, is punishment and, for John, is the greatest.

Almost immediately, John committed to making use of his time and his talents while incarcerated.  John has been in custody since his arrest on August 12, 2021. He has no criminal history and had never seen the inside of a jail.  Many who enter jail choose to languish and simply allow time to pass.  John did not.  He chose to find ways to engage and sought to better the circumstances of those in his unit.  He talked to people.  He organized the small group to play board games in the afternoons, watch television together, to read and discuss books.  He worked with more than one inmate to improve their reading and writing skills.  He practices mindfulness and invites others to join him. John has encouraged others and, in return, has been encouraged and found purpose and a use.  His time in both Belknap County and Merrimack County has been disciplinary free.

It was during his time in the Belknap County House of Corrections that John engaged in pastoral counseling.  This was the first time he honestly explored certain events in life that he now understands to have shaped him.  He regrets deeply that he hid and suppressed these things for so long and that doing so has caused others pain and grief.  He continues to process, to heal, and to understand himself and how he finds himself before this Court.

The shift from mandatory to advisory guideline sentencing says, in essence, that defendants are not only their crime of conviction.  The Court can consider the harm caused by the offense conduct while also considering the whole person, including the good they have done.  This is John's request.  He understands the harm the offense conduct has caused.  He understands the consequences his victims have endured and will continue to

endure. He has chosen to mitigate those consequences by pleading guilty and sparing the victims the embarrassment of a public trial, which would necessitate the shedding of anonymity and revelation of intimate and potentially unflattering evidence. This plea does nothing to mitigate John's ignominy, the press having already aired details of his life he never believed would be public. Nor does his plea in this matter do anything to aid his defense in the remaining criminal or civil matters.

**CONCLUSION**

For the foregoing reasons, Mr. Murray asks the Court to adopt the jointly proposed 300 month sentence, which is sufficient but not greater than necessary to achieve the purposes of sentencing. It reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.

                                                Respectfully submitted,
                                                John E. Murray III
                                                By counsel

Dated: March 13, 2023                /s/ Robin D. Melone
                                                Robin D. Melone
                                                NH Bar ID 16475
                                                Wadleigh, Starr & Peters, PLLC
                                                95 Market St.
                                                Manchester, NH  03101
                                                (603) 669-4140
                                                rmelone@wadleighlaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the within Motion was e-filed to AUSA Kasey Weiland on this 13th day of March 2023.

                                                                                 /s/ Robin D. Melone
                                                                                 Robin D. Melone,
                                                                                 NH Bar ID 16475